## PEOPLE'S GAS LIGHT AND COKE COMPANY *v.* CHICAGO.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 132. Argued January 20, 1904.—Decided April 4, 1904.

Where the contract claimed to have been impaired was made with one of several corporations merged into the complainant, and concededly affects only the property and franchises originally belonging to such constituent company, divisional relief cannot be granted affecting only such property when the bill is not framed in that aspect but prays for a suspension of the impairing ordinance as to all of complainant's property.

The rule, that a special statutory exemption does not pass to a new corporation succeeding others by consolidation or purchase in the absence of express direction to that effect in the statute, is applicable where the constituent companies are held and operated by one of them, under authority of the Legislature.

Even if the asserted exemption from change of rates existed and had not been lost by consolidation, the bill cannot be sustained where no such contract rights as alleged have been impaired or destroyed by the ordinance.

THE facts are stated in the opinion of the court.

*Mr. William D. Guthrie*, with whom *Mr. James F. Meagher* and *Mr. William F. Sheehan* were on the brief, for appellant:

The fundamental allegation of the bill was that the ordinance of October 15, 1900, impaired the obligation of the charter

contract which bound the legislature not to authorize the city council of Chicago to compel the People's Company to furnish gas at a less rate than three dollars per thousand feet. The city claimed that it had been duly authorized to pass the ordinance under and by virtue of the City and Village Act of 1872. Hence the controversy. Thus the jurisdiction of the Circuit Court was based solely upon the ground that the suit was one arising under the Constitution of the United States. *Walla Walla Case,* 172 U. S. 1, 10; *Joplin* v. *Light Company,* 191 U. S. 150, 158.

A court of equity has jurisdiction to restrain the enforcement of a void ordinance where such relief will avoid a multiplicity of suits and where there is no sufficient or adequate remedy at law for the protection of property interests. *Vicksburg Waterworks Co.* v. *Vicksburg,* 185 U. S. 65, 82; *Detroit* v. *Detroit Citizens' St. Ry. Co.,* 184 U. S. 368, 381; *Walla Walla Case, supra; Wilkie* v. *City of Chicago,* 188 Illinois, 444, 446; *Cicero Lumber Co.* v. *Town of Cicero,* 176 Illinois, 9, 31, 32; *City of Chicago* v. *Collins,* 175 Illinois, 445, 451; *Chicago Public Stock Exchange* v. *McClaughry,* 148 Illinois, 372, 381, and *Third Avenue R. R. Co.* v. *The Mayor &c. of New York,* 54 N. Y. 159, 161, cited with approval in the recent case of *Hale* v. *Allinson,* 188 U. S. 56, 76. See also *Smyth* v. *Ames,* 169 U. S. 466, at pages 517–518; *Cotting* v. *Kansas City Stock Yards Co.,* 183 U. S. 79, 99.

Many millions of the capital of the People's Company have been invested in its plant for manufacturing and distributing gas. The State and city and the inhabitants of Chicago have had the full benefit of the contract. The provision in question is plainly a part, and an important part, of the contract between the State and the People's Company. Such an enactment is a contract and justice and good policy alike require that the protection of the law should be assured to it. *The Binghamton Bridge,* 3 Wall. 51, 74. See also *Dartmouth College* v. *Woodward,* 4 Wheat. 518, 641; *Bridge Proprietors* v. *Hoboken Co.,* 1 Wall. 116, 145; *New Orleans Gas Co.* v. *Louisi-*

*ana Light Co.,* 115 U. S. 650, 670; *New Orleans Waterworks Co.* v. *Rivers,* 115 U. S. 674, 680, and other familiar cases to the same effect.

The city's consent in the ordinance of 1858 was equally extensive and embraced. "*any* of the streets, avenues, highways, public parks or squares throughout said city." Such a consent extends to every existing and every new street, and is in perpetuity. *People ex rel. Woodhaven Gas Co.* v. *Deehan,* 153 N. Y. 528, 533, cited with approval in *Illinois Central Railroad* v. *Chicago,* 176 U. S. 646, 666. See also *Chicago Gas Light Co.* v. *People's Gas Light Co.,* 121 Illinois, 530, 538. It was, therefore, the legislature and not the city council that granted the franchise which extended to the whole city.

The complainants were entitled to partial relief, if not to all, that was prayed for.

The demurrer was general and covered the whole bill, and if any part of the bill was good, the demurrer necessarily failed and should have been overruled. Such has long been the established practice in equity. *Tivington* v. *Story,* 9 Pet. 632, 658; *Pacific R. R. of Mo.* v. *Missouri Pac. Ry.,* 111 U. S. 505, 520; *Heath* v. *The Erie Railway Company,* 8 Blatch. 347, 407; *Savannah, F. & W. Ry. Co.* v. *Jacksonville, T. & K. W. Ry. Co.,* 79 Fed. Rep. 35, 38; 1 Daniell's Ch. Pr. (6th Am. ed.) p. 579; Story's Equity Pleadings, § 443; Fletcher's Eq. Pleading & Practice, § 204; 1 Foster's Fed. Pr. § 107.

To hold now that the ordinance is nevertheless to operate only in portions of the city, depending upon the history of the pipes through which the gas is supplied, would be to decree what the city council never intended to accomplish and would be judicial legislation beyond the power of any court. *Spraigue* v. *Thompson,* 118 U. S. 90, 95; *Pollock* v. *Farmers' Loan & Trust Co.,* 158 U. S. 601, 636; *Johnson* v. *State,* 59 N. J. L. 535, 539; *State* v. *O'Connor,* 5 N. Dak. 629, 632; *Jones* v. *Memphis,* 101 Tennessee, 188, 195; *James* v. *Bowman,* 190 U. S. 127, 140.

The presence of a substantial Federal question invests the

Circuit Court with jurisdiction to hear and determine not only the Federal, but every other, question involved in the controversy. *Penn Mutual Life Insurance Co.* v. *Austin,* 168 U. S. 685, 695; *Horner* v. *United States, No.* 2, 143 U. S. 570, 577; *In re Sawyer,* 124 U. S. 200, 220; *Railroad Co.* v. *Mississippi,* 102 U. S. 135, 141; *Tennessee* v. *Davis,* 100 U. S. 257, 270; *The Mayor* v. *Cooper,* 6 Wall. 247, 252; *Omaha Horse Ry. Co.* v. *Cable Tramway Co.,* 32 Fed. Rep. 727, 729; *Osborn* v. *U. S. Bank,* 9 Wheat. 738, 821.

On a direct appeal from a Circuit Court under the act of 1891 in any case that involves the construction or application of the Constitution of the United States, this court is not restricted to the consideration of the Federal question but acquires jurisdiction of the entire case and of all questions involved in it. *Davis & Farnum Mfg. Co.* v. *Los Angeles,* 189 U. S. 207, 216; *Scott* v. *Donald,* 165 U. S. 58, 73; *Press Publishing Co.* v. *Monroe,* 164 U. S. 105, 111; *Chappell* v. *United States,* 160 U. S. 499, 509; *Casey* v. *Houston &c. Ry. Co.,* 150 U. S. 170, 181; *Horner* v. *United States, No.* 2, 143 U. S. 570, 577; *N. O. Waterworks* v. *La. Sugar Co.,* 125 U. S. 18, 32.

Municipal corporations are merely agents of the state government and the power to regulate the price of gas has not been delegated to the city council of Chicago by the legislature of Illinois. Laws of Illinois, 1871, 1872, 227, 234, 259; *Harmon* v. *City of Chicago,* 110 Illinois, 400, 411; *Chicago &c. Co.* v. *Chicago,* 88 Illinois, 221, 223; *Atkins* v. *Kansas,* 191 U. S. 207, 220; *Coquard* v. *Oquawka,* 192 Illinois, 355, 365; *Kiel* v. *Chicago,* 176 Illinois, 137, 141; *Smith* v. *Dowell,* 148 Illinois, 51, 62. See also *Freeport Water Co.* v. *Freeport City,* 180 U. S. 587, 598; *Citizens' St. Ry.* v. *Detroit Railway,* 171 U. S. 48, 53; *Detroit Citizens' St. Ry. Co.* v. *City of Detroit,* 64 Fed. Rep. 628, 639; 22 U. S. App. 570, 590; *Old Colony Trust Co.* v. *City of Atlanta,* 83 Fed. Rep. 39, 44, affirmed 88 Fed. Rep. 859; *Cleveland City Ry. Co.* v. *City of Cleveland,* 94 Fed. Rep. 385, 396; *Laugel* v. *City of Bushnell,* 197 Illinois, 20, 27; *Town of Drummer* v. *Cox,* 165 Illinois, 648, 650; *City of Chicago*

v. McCoy, 136 Illinois, 344, 353; Seeger v. Mueller, 133 Illinois, 86, 94; Emmons v. City of Lewistown, 132 Illinois, 380, 384; Huesing v. City of Rock Island, 128 Illinois, 465, 477; Lewisville Natural Gas Co. v. State, 135 Indiana, 49, 51; City of Noblesville v. Noblesville Gas &c. Co., 157 Indiana, 162, 167; Muncie Natural Gas Co. v. City of Muncie (Ind. 1903), 66 N. E. Rep. 436, 438; In re Pryor, Petitioner, 55 Kansas, 724, 727; City of St. Louis v. Bell Telephone Co., 96 Missouri, 623, 628; Wabaska Electric Co. v. City of Wymore, 60 Nebraska, 199, 202; Schroeder v. Gas & Water Co., 20 Pa. Superior Ct. 255, 259; Tacoma Gas & Electric Light Co. v. Tacoma, 14 Washington, 288, 291; State ex rel. Telephone Co. v. City of Sheboygan, 111 Wisconsin, 23, 38.

Where a municipality has exclusive control over its streets, it may grant rights in them upon such reasonable terms as it may see fit, including a limitation on the charges which the party using the streets may require the public to pay for the services rendered. Such a limitation of charges is merely an exercise of the contractual powers of a municipality, and has nothing whatever to do with its police power, or with any power analogous thereto. People v. Suburban R. R. Co., 178 Illinois, 594, 604; People's Gas Light & Coke Co. v. Hale, 94 Ill. App. 406, 420; Freeport Water Co. v. Freeport City, 180 U. S. 587, 593, 598; Decatur Gas Light Co. v. City of Decatur, 120 Illinois, 67, 68.

Statutes of a general nature do not repeal, by implication, charters and special acts passed for the benefit of particular municipalities. Dillon on Mun. Corp. § 54; East St. Louis v. Maxwell, 99 Illinois, 439, 444; Hyde Park v. Oakwoods Cemetery Asso., 119 Illinois, 141, 148; People v. Murphy, 202 Illinois, 493, 496; People v. Brown, 189 Illinois, 619, 622; Village of Ridgway v. Gallatin County, 181 Illinois, 521, 526; Trausch v. County of Cook, 147 Illinois, 534, 537; Gunnarssohn v. City of Sterling, 92 Illinois, 569, 573; Covington v. City of East St. Louis, 78 Illinois, 548, 553; Town of Ottawa v. County of La Salle, 12 Illinois, 339, 341.

*Mr. Granville W. Browning*, with whom *Mr. Edgar Bronson Tolman* was on the brief, for appellee:

Appellant has no contract, either by virtue of its charter act of 1865 or of any provision of the gas consolidation act of 1897, whereby the city council is prohibited from reducing the price of gas to a reasonable sum.

The claim by such a company that it has a contract granting it immunity from regulation as to rates will not be allowed unless the surrender by the public is made by explicit and unmistakable language. The surrender will never be sustained by implication and will never be established by ambiguous terms. An ambiguous phrase must always be interpreted in favor of the public. To this effect are the following cases: *Georgia Banking Co.* v. *Smith*, 128 U. S. 174; *Freeport Water Co.* v. *Freeport City*, 180 U. S. 587; *Covington & Lexington Turnpike Co.* v. *Sandford*, 164 U. S. 578; *Charles River Bridge Case*, 11 Pet. 547; *Delaware R. R. Tax Case*, 18 Wall. 225; *Stone* v. *Farmers' L. & T. Co.*, 116 U. S. 307; *Reagan* v. *Farmers' Loan & Trust Co.*, 154 U. S. 362; *City of Covington* v. *Kentucky*, 173 U. S. 231; *Chi. Mil. & St. Paul Ry.* v. *Minnesota*, 134 U. S. 418.

The legislature has the right to fix the rates charged by those corporations serving the public, as gas companies, water companies, railroads and the like, the only limit being that, as regulated, they must be reasonable. Where the right has been reserved in the city, as in this case, the same rule prevails. *Ga. Banking Co.* v. *Smith*, 128 U. S. 174; *C. B. & Q. R. R.* v. *Iowa*, 94 U. S. 161; *Stone* v. *Farmers' Loan and Trust Co.*, 116 U. S. 307; *San Diego Land Co.* v. *National City*, 174 U. S. 739; *Covington and Lexington Turnpike Co.* v. *Sandford*, 164 U. S. 578; *Budd* v. *New York*, 143 U. S. 517; *Freeport Water Co.* v. *Freeport City*, 180 U. S. 557; *Barbier* v. *Connolly*, 113 U. S. 27; *Logansport Gas Co.* v. *City of Peru*, 89 Fed. Rep. 185; *Ruggles* v. *Illinois*, 108 U. S. 526; *Lake Shore* v. *Smith*, 173 U. S. 684; *Wisconsin, M. & P. R. R.* v. *Jacobson*, 179 U. S. 287; *Smyth* v. *Ames*, 169 U. S. 466; *Reagan* v. *Farmers' L. & T. Co.*, 154

U. S. 362; *Spring Valley Water Works* v. *Scottler,* 110 U. S. 347; *Chicago & Gd. Trunk Ry.* v. *Wellman,* 143 U. S. 339; *St. Louis & San Francisco Ry. Co.* v. *Gill,* 156 U. S. 652; *Brass* v. *Stoeser,* 153 U. S. 391.

If the pretended immunity claimed to be derived from the act of 1865 were not wiped out by the terms of section 9, immunities from public regulation enjoyed by constituent companies do not go to consolidated companies or successor companies, or to companies that succeed by purchase, assignment, foreclosure, or any other form of transfer, except by explicit language. Such an immunity is personal to the original corporation and does not pass. Unless there is express language to the contrary in the original charter or in the statute permitting the merger, etc., immunities belonging to the old company do not pass by sale, assignment, foreclosure, merger, etc. *Memphis &c. R. R.* v. *Commissioners,* 112 U. S. 609; *Wilson* v. *Garver,* 103 U. S. 417; *Chesapeake & Ohio R. R.* v. *Miller,* 114 U. S. 176, 184; *Morgan* v. *Louisiana,* 93 U. S. 217; *Dorr* v. *Beidleman,* 125 U. S. 689; *Railroad Co.* v. *Maine,* 96 U. S. 499; *St. Louis &c. R. R.* v. *Berry,* 113 U. S. 465; *Keokuk &c. Ry.* v. *Missouri,* 152 U. S. 301; *Hoge* v. *Railroad Co.,* 99 U. S. 354; *Shields* v. *Ohio,* 95 U. S. 323; *Railroad Co.* v. *Georgia,* 98 U. S. 359, 362; *L. & N. R. R.* v. *Palmer,* 109 U. S. 244; *Norfolk & W. R. R.* v. *Pendleton,* 156 U. S. 667; *St. L. & San Francisco Ry. Co.* v. *Gill,* 156 U. S. 649; *Covington Turnpike Co.* v. *Sanford,* 164 U. S. 586; *Yazoo & Miss. V. Ry. Co.* v. *Adams,* 180 U. S. 1.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

This was a bill to restrain the city of Chicago from putting in force a general ordinance passed October 15, 1900, providing that corporations, companies or persons manufacturing, selling and distributing gas in the city of Chicago for illuminating or fuel purposes should not charge individual consumers more than seventy-five cents per thousand cubic feet, and providing

penalties for violation of its provisions. The bill was demurred to, and an opinion delivered on hearing on demurrer 114 Fed. Rep. 384.

The opinion took a wider range than the bill as framed called for, because of certain facts not therein set forth, but which were admitted on the argument, and accordingly it was suggested that the bill be amended to bring in these facts, and, this having been done, the demurrer was renewed to the amended bill, whereupon, after argument, the court gave an additional brief opinion, (which appears in the record,) sustained the demurrer and dismissed the bill as amended for want of jurisdiction. Subsequently it was stipulated and agreed by and between the parties that the decree as entered did not correctly recite what was intended by the court, and that it should be amended by striking out the words "for want of jurisdiction," and inserting in lieu thereof the words "upon the merits as to the alleged contract rights of the complainant, but without prejudice to any other suit in respect to the question of power of the city council under the laws of the State of Illinois." An order was then entered by the court, amending its previous decree *nunc pro tunc* in the particulars named.

The facts presented by the amended bill were these: The People's Gas Light and Coke Company was incorporated by a special act of the general assembly of Illinois, approved February 12, 1855, creating it a corporation, with the usual powers and liabilities, with a capital stock not to exceed $500,000, and with power to manufacture and sell gas in the city of Chicago and "to lay pipes for the purpose of conducting the gas in any of the streets or avenues of said city, with the consent of the city council," and by the fourth section it was expressly provided that the company should furnish and supply to the city, for its public uses, at the election of the proper authorities of the city, "a sufficient supply of gas, at a rate not exceeding two dollars per thousand feet, and the inhabitants of said city at a rate not exceeding two dollars and fifty cents per thousand feet." The city council passed an ordinance, August 30, 1858,

granting the company permission and authority "to lay their gas mains, pipes, feeders and service pipes in any of the streets, avenues, highways, public parks or squares throughout said city, subject at all times, however, to the resolutions and ordinances of the common council of said city.". The act of 1855 was amended February 7, 1865, so as to allow an indefinite increase of the capital stock, and by section three of this act all the corporate powers of the corporation were vested in a board of directors and such officers and agents as the board should appoint, with power to the board to "adopt such bylaws, rules and regulations for the government of said corporation and the management of its affairs and business as they may think proper, not inconsistent with the laws of this State," the section continuing and concluding, "and the fourth section of said act is hereby repealed; but ten years after the passage of this act the common council of the city of Chicago may, by resolution or ordinance, regulate the prices charged by said company for gas; but said common council of the city of Chicago, shall, in no case, be authorized to compel the said company to furnish gas at a less rate than three dollars per thousand feet."

In 1870 a new constitution of the State of Illinois was adopted, providing that no law "making any irrevocable grant of special privileges or immunities shall be passed," Art. II, § 14; that the general assembly should not pass local or special laws "granting to any corporation, association, or individual any special or exclusive privilege, immunity, or franchise whatever," Art. IV, § 22; and that no corporation should be "created by special laws, or its charter extended, changed, or amended, except those for charitable, educational, penal, or reformatory purposes, which are to be and remain under the patronage and control of the State, but the general assembly shall provide, by general laws, for the organization of all corporations hereafter to be created," Art. XI, § 1.

June 5, 1897, an act was passed "in relation to gas companies," which authorized and empowered gas companies to

sell, transfer, convey or lease their real and personal property, rights, franchises and privileges, in whole or in part, to any other gas company doing business in the same city, town or village, and provided that ʋy complying with the provisions of the act, gas companies doing business in the same city, town or village might consolidate and merge into a single corporation, which should be one of said merging and consolidating corporations. "The companies, parties to the agreement or agreements, which provide for consolidation and merger shall thereupon be and are hereby declared to be consolidated and merged into the one corporation specified in such agreement or agreements." Laws Illinois, 1897, p. 179, §§ 2, 8.

The ninth and eleventh sections read as follows:

"§ 9. Any corporation purchasing or leasing the real and personal property of any other company or companies, as provided for in section 1, or any consolidated corporation, as authorized by section 2, shall be subject to and shall perform, for each of the companies so entering into said agreement or agreements, the legal obligations now resting upon each of them, respectively, under their respective charters and ordinances, except where the provisions thereof conflict with the exercise of the powers herein granted, in the same manner and to the same extent as if the companies had remained individual and distinct; and such performance by said corporation so purchasing or leasing, or by such consolidated corporation, shall be held and considered as the performance by each of the respective companies so selling, leasing or consolidating, of the legal obligations theretofore resting upon each of them respectively: *Provided, however*, that nothing in this act shall be construed as extinguishing said companies entering into the agreement or agreements mentioned in this act, or annulling or impairing any of their respective franchises, licenses or privileges, but they shall severally be regarded as still subsisting, so far as their continuance for the purpose of upholding any right, title or interest, power, privilege, or immunity ever exercised or enjoyed by any of them, may be necessary

for the protection of their respective creditors or mortgagees, or any of them; the separate exercise of their respective powers, and the separate enjoyment of their separate privileges and immunities being suspended until the protection of such creditors or mortgagees shall require their resumption, when such suspension shall cease, so far as, and for such time as, the protection of such creditors or mortgagees may require."

"§ 11. Any corporation purchasing or leasing the property of any company or companies, or into which any company or companies are consolidated and merged under this act, shall be, at the time of availing itself of or accepting the benefits of this act, in the actual business of furnishing gas to consumers; and shall be subject to the following provisions:

"Such corporation shall not increase the price charged by it for gas of the quality furnished to consumers during any part of the year immediately preceding such purchase or lease or such consolidation and merger.

"Such corporation shall furnish gas to consumers as good in quality as it furnished previous to such purchase or lease or such consolidation and merger."

The People's Gas Light and Coke Company under this act became consolidated with some ten other gas companies, most of which were organized under general laws passed in pursuance of the constitution of 1870. One of them, the Chicago Gas Light and Coke Company, was incorporated by special act of February 12, 1849, amended February 9, 1855, but this contained no restriction on the right of the general assembly or the city to regulate the price of gas from time to time.

The bill quoted from the eleventh section of the act of 1897 the clause in reference to the increase of price for gas of the quality furnished consumers during any part of the year immediately preceding purchase or lease, or consolidation and merger, and alleged the fact to be that during the year immediately preceding the acquisition by complainant of the various other gas companies, complainant charged the net rate or price of one dollar per thousand cubic feet; and since the acquisition

of the plants and property of those corporations that complainant had uniformly charged the same net rate or price for gas sold by it in the city, which gas was better in quality and of higher candle power than the gas theretofore sold by the companies acquired; and complainant averred, as matter of law, that the price or rate thus fixed was a fixing and regulating by the State of the price or rate to be charged by complainant for gas supplied subsequent to the acquisition of said other companies.

The bill also set forth an agreement made between the city and the People's Gas Light and Coke Company, July 20, 1899, which recited that agreements had theretofore subsisted between the city and the People's Company, and between the city and certain other gas companies, which companies subsequently became merged into the People's Company, and provided for a continuance of the lighting of the streets on the same terms as it had been done, and for the payment by the People's Company to the city of a certain percentage of the gross receipts of the People's Company from the sales of gas during 1899, including therein the receipts from the operation of the properties of each of the gas companies consolidated with the People's Company, and for the payment by the city of amounts due or to become due to the People's Company or confession of judgment for amounts remaining unpaid; and the bill further set forth certain orders of the city between August 5, 1897, and March 11, 1901, for the laying of pipes and mains by the People's Company in the streets and avenues of the city. Certain mortgages were likewise referred to and it was alleged that bonds thereunder had been sold to parties who purchased the same in the belief that the city was prohibited by its charter from compelling the People's Company to furnish gas at a less rate than three dollars per thousand cubic feet.

The bill also averred that the People's Company, prior to the consolidation, distributed gas chiefly in the west division of the city, although its pipes and mains extended into the south

division, and that the other companies, or nearly all of them, severally had plants and were engaged in manufacturing and distributing gas in various other sections of the city.

On March 5, 1900, the city council passed an ordinance which provided "that no corporation, company or companies, firm or persons manufacturing, selling, supplying or distributing gas in the city of Chicago for illuminating or for fuel purposes shall charge, exact, demand or collect from any consumer thereof more than the sum of seventy-five (75) cents per one thousand (1,000) cubic feet of gas consumed or used."

The jurisdiction of the Circuit Court was invoked on the ground of impairment or deprivation by the ordinance of contract rights of complainant acquired by its charter, and the bill prayed, among other things, "that it may be adjudged and decreed that by said charter of the People's Gas Light and Coke Company, the people of the State of Illinois agreed with the People's Gas Light and Coke Company, that the common council of the city of Chicago should never be authorized to compel the People's Gas Light and Coke Company to furnish gas at a less rate than $3 per thousand cubic feet, and that such contract is a valuable property right of the said People's Gas Light and Coke Company."

The Circuit Court declined to specifically dispose of complainant's contention that by the act of February 7, 1865, the State had contracted that the city should never require the company to furnish gas at a less rate than three dollars per thousand feet, because it held that the limitation or exemption, even if conceded, did not apply to the territory and rights acquired by the merger, and that the bill did not seek divisional relief, and was not framed in that aspect; while most of the consolidated companies were organized under the general incorporation law passed in pursuance of the constitution of 1870, and the right to fix reasonable rates was reserved, the works not having been installed under any explicit contract to the contrary, if such could have been entered into.

As to the clause of the eleventh section of the act of June 5,

1897, providing: "Such corporation shall not increase the price charged by it for gas of the quality furnished to consumers during any part of the year immediately preceding such purchase or lease, or such consolidation and merger," the Circuit Court ruled that this did not fix a rate unalterable by either party, but a rate beyond which the consolidated companies could not go.

The Circuit Court further held that the contention that the State's power to regulate rates had not been delegated to the city was not a Federal question, and that as the ground of impairment or deprivation of contract rights acquired by the charter failed under the bill as framed, the court could not go further and decide that question in this case; while the decree, as it stands, amended by consent, in terms reserved the question to be raised in some other appropriate suit in a proper court.

In these circumstances we are constrained to decline the consideration of that question so far as it relates to the contention that power to regulate was conferred by the general law of Illinois of 1871–2 providing for the incorporation of cities and villages under which the city of Chicago as now constituted was incorporated.

But the decree dismissed the bill "as to the alleged contract rights of complainant," and in so doing the Circuit Court dealt with the alleged fixing of rates by the act of 1897 as well as with the alleged contract of 1865 that the city should not be authorized to fix a rate of less than three dollars, for although, as we have said, it was the impairment or deprivation of the latter which was made the ground of Federal jurisdiction, it was in effect as asserted to have been modified by the act of 1897. We agree with the Circuit Court that the clause of section eleven of the act of 1897, that "such corporation shall not increase the price charged by it for gas of the quality furnished to consumers during any part of the year immediately preceding such purchase or lease or such consolidation or merger," read according to the plain and ordinary signification of

the words, it being a general law applicable to every gas company and to every city in the State, was not intended to fix and did not fix a rate unalterable by either party, but simply a rate above which consolidated companies could not go. This disposes of it as an independent ground of relief, and leaves to be considered the provision of the amended charter of 1865, that "ten years after the passage of this act the common council of the city of Chicago may, by resolution or ordinance, regulate the prices charged by said company for gas; but said common council of the city of Chicago shall, in no case, be authorized to compel the said company to furnish gas at a less rate than three dollars per thousand feet," as affected by the act of 1897. That is to say, was the city cut off from reducing the price below one dollar, conceding the power of the State to do so?

It is contended, on the one hand, that the first part of this provision granted the city the general power to regulate the price after ten years, and that the latter part then ceased to operate as a restriction. And, on the other hand, that the whole clause constituted a contract that the general assembly would not thereafter authorize the city to fix the rate at less than three dollars. But it is expressly conceded that the general assembly possessed the power to regulate the price of gas and to prescribe reasonable rates, and that, as complainant availed itself of the act of 1897, and thereby acquired the plants of other gas companies, it can now only charge the rate it had been charging the year immediately preceding the acquisition of those properties, namely, one dollar per thousand cubic feet.

Assuming, but without intimating any opinion to that effect, that by the amended charter of 1865 the State contracted with the People's Gas Light and Coke Company that the city should not thereafter be empowered to reduce the price of gas below three dollars per thousand feet, the preliminary inquiry is whether by the consolidation that contract was extended to the plants of and territory occupied by the companies absorbed.

The Circuit Court held that it was not so extended, and that as the bill sought relief in respect of the entire plants and territory, the entire system as consolidated, it could not be maintained because there was no such contract which the ordinance impaired or destroyed.

It is said that partial relief might have been accorded unless by the consolidation the alleged exemption was lost, but the bill was not framed in the alternative, and the ordinance itself did not contemplate a divided operation, although if the exemption existed as to part of the system the ordinance would not necessarily be wholly void but might be held inoperative *pro tanto* notwithstanding serious difficulties in so applying it. See *Chesapeake and Ohio Railroad Company* v. *Virginia*, 94 U. S. 718, and cases cited.

Was the alleged exemption extended by the act of 1897, when the other companies were acquired?

Prior to that time the operations of the People's Company were practically confined to the west division of the city, and although it was empowered to lay pipes in any of the streets, or avenues, this was only with the city's consent. The city in 1858 authorized the company to do this, but this was "subject at all times" to the city's resolutions and ordinances.

It is true that after the acquisition of the other companies the city compromised with the People's Company in respect of claims for gas furnished, and also ordered the company to lay mains in streets which formerly did not have them, but this action was not equivalent to consent to the extension of the alleged restriction on rates to territory acquired under the merger, with the accomplishment of which the city had nothing to do.

The act of 1897 provided that the consolidated corporation should be subject to the legal obligations of the companies taken over, and most of these were not exempt from the right of regulatio , and were obliged to submit to its exercise.

By the state constitution the general assembly was forbidden to make "any irrevocable grant of special privileges or im-

munities," and the general rule is that a special statutory exemption, such as immunity from taxation, from the right to determine rates of fare, or to control tolls, and the like, does not pass to a new corporation succeeding others by consolidation or purchase, in the absence of express direction to that effect in the statute. *St. Louis & San Francisco Railway v. Gill,* 156 U. S. 649; *Norfolk & Western Railroad Company v. Pendleton,* 156 U. S. 667; *Covington &c. Turnpike Company v. Sandford,* 164 U. S. 578; *Minneapolis & St. Louis Railway Company v. Gardner,* 177 U. S. 332; *Georgia Railroad & Banking Company v. Smith,* 128 U. S. 174. And the same rule is applicable where the constituent companies are merely owned and operated by one of them as authorized by the legislature. An exemption held by the latter would not pass to the others unless so provided. So that the act of 1897 cannot be construed as extending any prior immunity the acquiring company possessed over the whole system of all the companies consolidated.

And if not, and the Circuit Court was right, as we think it was, in holding that under the present bill complainant's alleged exemption could not be enforced as to so much of the system as originally belonged to it, then the court was justified in declining to discuss whether by the consolidation the alleged exemption was lost altogether.

In short, agreeing with the Circuit Court, we are of opinion that the asserted immunity, (conceding it *arguendo,*) did not extend to so much of the system as passed to the consolidated company from companies not possessing such immunity in their own right; that under this bill relief could not be accorded in respect of part of the sytsem; that no contract that the price of gas should not be reduced below one dollar per thousand feet was created, nor was the alleged original exemption merely modified and extended; and that the decree dismissing the bill because there were no such contract rights as alleged impaired or destroyed by the ordinance was right.

*Decree affirmed.*