CITY OF CHICAGO v. MILLS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 286.   Submitted December 21, 1906.—Decided February 4, 1907.

Although the certificate of the Circuit Court may not state exactly how the jurisdictional question certified arose, this court can ascertain it from the record together with the opinion of the court below made a part thereof.

The jurisdiction of the Circuit Court must be determined with reference to the attitude of the case at the date of the filing of the bill.

When a citizen of one State has a cause of action against a citizen of another State which he may lawfully prosecute in a Federal court, his motive in preferring a Federal tribunal, in the absence of fraud and collusion, is immaterial.

If it does not appear that there was any collusion within the meaning of the ninety-fourth rule in equity for the purpose of conferring jurisdiction, not otherwise existing, on the Circuit Court of the United States, that court does not lose its jurisdiction of a suit brought by a non-resident stockholder, after request to and refusal by the corporation, to enjoin

the enforcement of an ordinance against the corporation, and of which the
court would not have had jurisdiction had the corporation been complain-
ant, because subsequent events make it to the interest of the corporation
and its officers to make common cause with the complainant stockholder.

An admission by complainant that he expected the action to be brought
in the United States court does not necessarily show collusion to confer
jurisdiction.

In this case *held* on the facts that no collusion between the stockholder
bringing the suit and the corporation refusing to bring it was shown
that deprived the Circuit Court of jurisdiction thereover.

143 Fed. Rep. 430 affirmed.

THE facts are stated in the opinion.

*Mr. James Hamilton Lewis, Mr. Henry M. Ashton* and *Mr.
David K. Tone* for appellant:

The undisputed evidence in this record shows that this suit
was collusively brought by Mr. Mills at the instigation of and
for the benefit of the People's Gas Light and Coke Company,
for the purpose of conferring jurisdiction upon a Federal court
in a case where such jurisdiction was otherwise wanting.

When it is sought to determine whether a suit is collusively
brought for the purpose of conferring jurisdiction upon a
Federal court, the question of motive becomes an important
one.

Here there was every motive for instituting a collusive suit,
for the conduct of the People's Company, and its officers and
directors, prior to the filing of the bill of complaint by Mills,
clearly demonstrated that an unsuccessful effort had already
been made by them to confer upon a Federal court jurisdiction
of the litigation in question.

The fact that in a case where the question of conferring
jurisdiction upon a Federal court by getting up a collusive
controversy is involved, the burden of proof is upon the com-
plainant, is established by the well-considered case of *Lehigh
Mining & Manufacturing Co.* v. *Kelly,* 160 U. S. 337.

There is no force in the contention that there was a real
controversy between Mr. Mills and the directors of the People's
Company when the bill in the cause was filed.

The undisputed evidence in this record shows that the corporate rights were being adequately protected by the officers of the People's Company at the time the bill of complaint was filed, and therefore a stockholder had no standing in the Federal court.

Independently of any question of collusion, the undisputed evidence in this record shows that the corporate rights of the stockholders were adequately protected by the injunction in force in the case of the *People's Gas Light and Coke Company.* v. *The City of Chicago,* then pending in this court. No stockholder had any standing in court to interfere, so long as no irreparable injury was suffered or threatened, and certainly not while the board of directors were proceeding in good faith and in the exercise of their best judgment in protecting the corporate rights. That provision is established by all the authorities.

The general rule is that a majority of the stockholders of a corporation, through its board of directors, are invested with the sole power to institute suits in behalf of the corporation and to redress corporate grievances and to determine when and in what courts such suits shall be instituted, and an individual stockholder has no standing for any such purpose. *Hawes* v. *Oakland,* 104 U. S. 450–457; Morawetz on Corp., § 238.

To the foregoing rule should be added the qualification that where a corporation refuses to act and that refusal is arbitrary and wrongful and without just cause and a demand is made upon the corporation to act and it still refuses, a stockholder may institute a suit in his own name in behalf of himself and other stockholders to protect corporate rights. The mere allegation that a demand has been made upon the corporation and it refuses to act is insufficient to authorize a stockholder to begin suit. It must further appear that the refusal was *wrongful,* constituting a *breach of trust,* for although the corporate officers may have acted erroneously in refusing to bring a suit, that is not sufficient to authorize the stockholders to

proceed, so long as it appears that the corporate officers were acting in good faith, with reasonable diligence, and in the exercise of their sound discretion. *Memphis City v. Dean*, 8 Wall. 64, 73; *Dodge v. Woolsey*, 18 How. 345; *Wallace v. Lincoln Savings Bank*, 89 Tennessee, 633; *Samuel v. Holladay*, 1 Woolw., U. S. C. Ct. 400; Morawetz on Corp., § 244; *Hawes v. Oakland*, 104 U. S. 457, 460, 462.

*Mr. William D. Guthrie, Mr. John J. Herrick and Mr. I. K. Boyesen* for appellee:

The decree in the prior suit dismissing the bill for want of jurisdiction, was not a bar to a new suit in a court of the United States by the company itself, nor in any event for divisional relief under the contract, if the company elected to demand it. The company itself, therefore, could have filed in a court of the United States substantially the same bill of complaint that Mills originally filed, praying divisional relief under its alleged contract right. It follows that diversity of citizenship was not essential or controlling as the basis of the jurisdiction of the Circuit Court, and that so far as jurisdiction as a Federal court was concerned, there was really no occasion or motive for collusion. There can be no collusion without reason or motive or to subserve some purpose. *Simpson v. Union Stock Yards Co.*, 110 Fed. Rep. 799, 801; *Illinois Central R. R. v. Adams*, 180 U. S. 28, 33, 37; *Ball v. Rutland R. Co.*, 93 Fed. Rep. 513, 515; *Kimball v. Cedar Rapids*, 99 Fed. Rep. 130.

The question of collusion is, of course, to be determined by the conditions existing when Mr. Mills requested the board of directors and the stockholders of the People's Company to institute a new suit, and when he filed his bill, June 8, 1903, and not by subsequent developments. *Mollan v. Torrance*, 9 Wheat. 537, 539. See also *Kirby v. American Soda Fountain Co.*, 194 U. S. 141, 145; *Hardenbergh v. Ray*, 151 U. S. 112, 118; *Colorado Central Mining Co. v. Turck*, 150 U. S. 138, 144; *Mexican Central Ry. v. Pinkney*, 149 U. S. 194, 200.

MR. JUSTICE DAY delivered the opinion of the court.

This case is here upon a question of jurisdiction of the Circuit Court of the United States for the Northern District of Illinois to entertain the suit. 26 Stat. 826. The case originated in a bill filed in that court by the complainant, Darius O. Mills, a citizen of California, as a stockholder in the People's Gas, Light and Coke Company, a corporation of the State of Illinois, to restrain the city of Chicago from enforcing a certain ordinance limiting the right of the gas company as to charges for furnishing gas.

Complainant averred a demand of the directors that an action be brought by the company to restrain the city from enforcing the ordinance, and alleged compliance with the ninety-fourth equity rule, and the refusal of the company to bring the action.

The original bill alleged that the ordinance impaired the obligation of the contract contained in the charter of the gas company, in contravention of the contract clause of the Federal Constitution; and, also, that the ordinance was illegal in that the city had no power to pass it.

The ordinance thus complained of was adopted by the city of Chicago, October 15, 1900, and provided that charges for gas in excess of 75 cents per 1,000 cubic feet should be illegal, and fixed a penalty of not less than $25 or more than $200 for each and every violation of the ordinance.

The objection made to the jurisdiction of the Circuit Court, and which is said to be established in the record and duly presented here, is based upon the allegation that the suit by Mills was brought in the Federal court by collusion between him and the gas company, and for the fraudulent purpose of invoking the jurisdiction of the Federal court concerning a controversy which was really between the company and the city of Chicago, parties lacking the requisite diversity of citizenship to maintain the suit in the Federal courts.

The record discloses that the appeal was allowed to this

court solely upon the question of the jurisdiction of the court as a Circuit Court of the United States. A certificate entered the same term at which the appeal was allowed sets forth that the city objected to the jurisdiction of the court as a Federal court, and that the appeal was prayed solely upon the question of jurisdiction of the court as a Circuit Court of the United States, and that the appeal was granted solely upon the question of jurisdiction.

Portions of the proceedings, including the testimony on the question of jurisdiction, duly signed and sealed and made part of the record, are certified to this court by certificate in the form of a bill of exceptions. *In re Lehigh Mining Manufacturing Co.*, 156 U. S. 322; *Nichols Lumber Co.* v. *Franson*, decided at this term. 203 U. S. 278.

A preliminary objection is made that the certificate does not show whether the jurisdictional question arose from insufficient amount, want of diversity of citizenship, collusion or otherwise. But we are of the opinion that an examination of the record, aided by the opinion of the court contained therein, and made part thereof, distinctly shows that the question of jurisdiction passed upon concerned the collusive character of the action of the complainant.

We think this brings the case within the ruling in *Smith* v. *McKay*, 161 U. S. 355, in which the court, looking into the character of the appeal, the certificate of the court and the certified copy of the opinion made part of the record, sustained the court's jurisdiction, citing, with approval, *Shields* v. *Coleman*, 157 U. S 168, and *In re Lehigh Mining Manufacturing Company*, 156 U. S. 322.

The Circuit Court, after an examination of the testimony, reached the conclusion that the action was not collusive, and upon final decree granted a perpetual injunction against the enforcement of the ordinance in question. On this appeal we are only concerned with the correctness of the conclusion reached in the Circuit Court as to the question of jurisdiction. This question is before us upon this record. *Wetmore* v. *Rymer*,

169 U. S. 115. In order to determine it it is necessary to consider briefly as may be the facts shown in this record.

The ordinance in question was passed October. 15, 1900. The People's Gas, Light and Coke Company, on the twenty-first of December, 1900, brought a suit in the Circuit Court of the United States for the Northern District of Illinois, seeking to enjoin enforcement of the ordinance upon the ground that it impaired the obligation of its charter contract, denied equal protection of the laws, and amounted to a confiscation of its property; and upon the further ground that no power had been conferred upon the city of Chicago by the legislature of Illinois to thus regulate the price of gas.

It is unnecessary to recite all of the proceedings of that suit in detail. The history of the litigation will be found in the opinion of the Chief Justice when the case came here from the Circuit Court on appeal, 194 U. S. 1.

To the bill as originally filed in that case the city of Chicago filed a general demurrer, and the Circuit Court, holding that no constitutional right of the company was impaired, decided that its jurisdiction would not extend to the question of the power of the council to pass the ordinance in question, and that such a question was one primarily for the state courts; thereupon the company filed an amended bill, limiting its rights to the alleged impairment of its contract. The city of Chicago also demurred to the amended bill, and upon the hearing of the demurrer it was sustained and the bill dismissed for want of jurisdiction, and a final decree was entered to that effect. An appeal was thereupon taken to this court.

When the litigation had progressed thus far, complainant Mills, who was the largest stockholder in the company, consulted counsel in New York with a view to protecting his interests. Counsel having examined the record prepared a letter dated December 16, 1902, addressed to the directors of the gas company and signed by complainant, in which he set forth that the proceedings in the suit concerning the ordinance reducing the price of gas to 75 cents per 1,000 cubic feet had been sub-

mitted to his counsel, together with a copy of the opinion of
the Circuit Court, and that an appeal was then pending in the
Supreme Court of the United States; the advice of his counsel
that that suit might not adequately protect his interests, as
the bill was dismissed for want of jurisdiction and that the
Supreme Court might limit the decision of the case to the
question of jurisdiction. And, further, that it did not involve
the question of the power of the council of the city of Chicago
to reduce the rates of the company. He then requested the
institution of a suit against the city of Chicago at the earliest
practicable moment for the purpose of preventing the en-
forcement of the ordinance, upon the ground that it im-
paired its charter contract and that the council had no power
to pass it. The letter further expounded the necessity of re-
sorting to a court of equity for protection of the company's
rights.

The record discloses that the company's counsel came to
New York, where a conference was had with the counsel re-
tained by Mills, and a difference of opinion was developed as
to the propriety and advisability of a new suit which would
cover the points in difference. The result of this conference
was that the company's counsel notified counsel for Mills
that he should advise the board to decline the request to bring
a new suit.

On January 29, 1903, the company wrote to Mills, declining
to begin the suit, and sent a copy of the resolution reciting the
belief of the board that for the company to institute further
legal proceedings to test the validity of the ordinance of Octo-
ber 15, 1900, would excite public prejudice against the com-
pany, which at that time it was deemed of great importance
to avoid, and afterwards, at the annual meeting of the stock-
holders of the company, a resolution directing the beginning
of the suit was defeated.

The question of jurisdiction must be decided, having refer-
ence to the attitude of the case at the date the bill was filed,
on June 8, 1903. *Kirby* v. *American Soda Fountain Co.*, 194

U. S. 141, 145, 146. As to the refusal of the company to institute a new suit, there is nothing in the record to show any concert of action between complainant and the company. At that time his counsel in New York was not concerned in the litigation in Chicago or in the appeal to this court. As the case brought by the gas company then stood, it had been dismissed for want of jurisdiction, and an appeal taken from that decree of dismissal. The case did not necessarily involve the question of contract rights, and did not embrace the question of power of the city.

In this attitude of affairs counsel might well advise that the protection of the stockholders' interest required the beginning of a suit which should embrace the vital questions in issue. There was a sharp difference of views between the representatives of Mills and those of the company's solicitors as to the advisability of bringing an action.

For the prudential reasons outlined in their letter of January 29, 1903, above referred to, the directors of the company declined to bring the suit. After the judgment of the Circuit Court was affirmed in this court, the question of the power of the city to pass the ordinance was left undecided, and was subsequently litigated to a final decree in favor of the contention made in the suit begun by Mills.

It is true that upon the hearing of the demurrer in this action the Circuit Court ordered a decree correcting its former decree in the gas company suit so as to show that the court decided the case upon the merits as to the allegations as to contract, and dismissed the bill without prejudice to the bringing of any other suit to test the power of the city.

The corrected decree was brought before this court in the then pending appeal of the gas company. 194 U. S. 1.

After the decision in this court, affirming the decree in the gas company suit, an amended bill was filed by complainant Mills, based solely upon the alleged want of power of the city council of Chicago to pass the ordinance in controversy, which resulted in the decree to which we have referred, enjoining

the enforcement of the ordinance, for the reason that the city council of Chicago had no power to pass the same.

As we have said, we think the record establishes that complainant and his counsel honestly believed that such new suit was necessary to protect the stockholders' interests. There is an entire lack of testimony to show any collusive action at the time of the beginning of the suit.

It is true that subsequent events made it to the interest of the company to make common cause with Mills against the enforcement of the ordinance in question, but when he began his suit no proceedings were pending which involved the important question of the power of the city upon which the complainant ultimately prevailed.

It is true that an officer of the company, who was the next largest stockholder to Mills, contributed to the expenses in this suit; but he testified, and there is nothing in the record to contradict him, that he paid this money from his own resources without actual repayment or any understanding with the company that he should be reimbursed.

It is true that Mills' counsel was retained in the suit in this court after the beginning of his suit in Chicago.

It is also true that, in answering to a question put in the language of the ninety-fourth rule, as to whether the suit was brought to confer upon the Circuit Court of the United States jurisdiction in a case of which it would not otherwise have cognizance, complainant answered that he so understood it, but subsequently said that he did not understand the question. This admission, intentionally made, would not necessarily show collusion. But we think that it was not the purpose of the complainant to say more than that he expected his action to be brought in the United States court. When a citizen of one State has a cause of action against a citizen of another State, which he may prosecute lawfully in a Federal court, and when the suit is free from fraud or collusion, his motive in preferring a Federal tribunal is immaterial. *Blair v. Chicago*, 201 U. S. 400, 408, and previous cases in this court therein cited.

Upon the whole record we agree with the Circuit Court that the testimony does not disclose that the jurisdiction of the Federal court was collusively and fraudulently invoked, and the judgment below will be

*Affirmed.*

Dissenting: MR. CHIEF JUSTICE FULLER and MR. JUSTICE HARLAN.