**COHEN v. INDUSTRIAL FINANCE CORPORATION et al.**

District Court, S. D. New York.
Jan. 15, 1942.

See, also, D.C., 44 F.Supp. 489.

Bondy & Schloss, of New York City (Eugene L. Bondy, of New York City, of counsel), for complainant.

Jay Leo Rothschild, of New York City (Walter S. Beck, of New York City, of counsel), for defendants.

LEIBELL, District Judge.

This is a suit by a stockholder of Industrial Acceptance Corporation against two corporations, Industrial Finance Corporation and Morris Plan Corporation which are alleged to have conspired to deprive Industrial Acceptance Corporation of its working capital, to transfer its liquid assets to Industrial Finance Corporation for investment in Morris Plan Corporation and thus to put Industrial Acceptance Corporation out of business. The latter corporation is a nominal defendant.

Defendants move under Rule 12, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, to dismiss the complaint herein on the ground that the plaintiff stockholder does not have the legal capacity to sue because of an alleged failure to comply with a provision of Rule 23(b) F.R.C.P. and on the further ground that the complaint does not state facts sufficient to constitute a cause of action.

Plaintiff's attorneys, opposing the motions, contend that she has fully complied with Rule 23(b) by pleading with great particularity valid reasons for not making a demand upon the managing directors of Industrial Acceptance Corporation that they bring the suit for the relief demanded herein.

The complaint alleges that "Acceptance" was engaged in the business of financing automobile purchases; that from the year of its organization 1924 until 1929, the year of the last published report of its transactions, the approximate annual volume of business transacted by "Acceptance" varied between $68,000,000 and $87,-000,000; that the average annual net income of "Acceptance" for such period was approximately $875,000.

The gravamen of the complaint is the alleged conspiracy by defendants "Finance" and "Morris Plan".

Paragraphs 20 and 21 state:

"20. In or about the year 1930 or 1931 the defendants IFC and MPC agreed, planned and conspired with each other to deprive defendant IAC of its working capital; to transfer its liquid assets to defendant IFC for the purpose of investing the same largely as a holding company in the stock of MPC; to render defendant IAC unable to continue its profitable business theretofore conducted and to reap for themselves, the defendants IFC and MPC, the profits theretofore earned by defendant IAC; to transfer its activities to defendant MPC and other subsidiaries of defendant IFC and to leave defendant IAC wholly impotent to conduct business and to earn profits for its stockholders.

"21. In pursuance of such agreement, plan and conspiracy, in or about the year 1930 or 1931 a contract was made by and

between defendant IFC and defendant IAC whereby defendant IAC agreed to grant to defendant IFC a revolving line of credit without security to an aggregate total of Three million ($3,000,000.) dollars and further agreed to accept in whole or partial repayment of an indebtedness which might at any time be owing by defendant IFC to defendant IAC under the said agreement Second Preferred stock of defendant IAC, valuing the said stock, for purposes of such payment, at the price which defendant IAC would be obliged to pay therefor to the holders thereof upon a dissolution or a liquidation of defendant IAC."

The line of "credit" was later increased to $6,000,000 and the interest was reduced from 6% to 1%.

It is alleged that at the time of the execution of the transactions complained of, at least thirteen of the seventeen directors of "Acceptance" were also directors of "Finance", and that the president, vice-president, secretary and assistant secretary of "Finance" held the same offices in "Acceptance". It is also alleged that after these transactions had been completed, "Finance" continued to dominate "Acceptance", by the device of electing controlled employees and nominees of "Finance" to the Board of directors of "Acceptance"; that this was possible because "Finance" owned or controlled from 85% to 90% of the voting stock of "Acceptance". All the outstanding second preferred stock of "Acceptance" is also owned by "Finance".

The complaint further alleges that "Finance" so successfully consummated the conspiracy to siphon all the assets of "Acceptance" into "Finance" and "Morris Plan" that the amount of commercial paper, in which "Acceptance" dealt, declined from $35,000,000 in 1930 to less than $175,000 at the end of 1932.

The complaint alleges that these acts greatly damaged "Acceptance" and especially its first preferred stockholders. It is also alleged that actions have been brought by stockholders of "Acceptance" to secure redress for the wrongs alleged in the complaint but that those actions were caused to be settled and discontinued without profit to "Acceptance" by the directors of "Acceptance".

Paragraph 18th of the complaint alleges: "18. At all times beginning at latest with the year 1930 up to the present, the actions of the board of directors of defendant IAC have been wholly dominated and controlled by defendant IFC through the election to the board of defendant IAC of an overwhelming majority of directors who were also directors of defendant IFC up to the year 1937 and thereafter of directors who were employees and nominees of defendant IFC; and the control of defendant IFC over defendant IAC was so complete that defendant IAC had no volition, power or capacity independent of the volition, power and capacity of defendant IFC."

The plaintiff herein concededly made no demand herself upon the directors of "Acceptance" to institute the present suit. Instead the complaint alleges such a demand was rendered unnecessary and futile because of facts pleaded with considerable particularity.

The complaint states:

"34. Heretofore, demands were made upon the board of directors of defendant IAC and each of them that they cause defendant IAC to rescind the aforesaid fraudulent agreement and recover from defendant IFC the amount of over Six million ($6,000,000.) dollars in which it was then indebted to defendant IAC and to take other measures for the protection and advantage of defendant IAC and its stockholders, including the relief prayed for by the present action; but no action has been taken by the defendant IAC or its directors for the relief requested in such demands; and actions have been brought by stockholders of the defendant IAC to secure redress for the wrongs alleged herein but such actions have been caused by the defendant IAC and its directors to be settled and discontinued without benefit to the defendant IAC.

"35. In or about the year 1937, by reason of the acts hereinbefore specified, defendant IAC had become so inactive that all except one of the directors common to both of the boards of defendant IAC and defendant IFC ceased to act as directors of defendant IAC and thereupon defendant IFC caused to be elected to the board of directors of defendant IAC various subordinate employees in the control of, and subservient to, the board of directors of defendant IFC and such board of directors so elected has been with substantial identity of membership the board of directors of defendant IAC from the year 1937 to the present time.

"36. The board of directors of defendant IAC at the present time is substantially the same board of directors as that to which the aforesaid demands were addressed.

"37. The present board of directors of defendant IAC is wholly within the control of defendant IFC and has been from the time of its election in or about the year 1937.

"38. Complainant has made no demand upon the board of directors of defendant IAC that an action be brought to recover for the transactions alleged herein, for the reason that the members of the present board of directors of defendant IAC have had knowledge of all of the acts complained of herein and have acquiesced and participated therein; and the said board of directors has received demands from other stockholders that such action be brought and has failed and refused to bring such action; and the said board of directors is in no position to exercise unbiased judgment with respect to the bringing of such action for the reason that they are dominated and controlled by defendant IFC; and the said defendant IFC owns more than a majority of all of the voting stock of defendant IAC; and such a demand is wholly futile and vain."

Defendants have moved to dismiss this complaint upon the ground that Rule 23 (b) F.R.C.P. has not been complied with. The rule provides:

"(b) Secondary Action By Shareholders. In an action brought to enforce a secondary right on the part of one or more shareholders in an association, incorporated or unincorporated, because the association refuses to enforce rights which may properly be asserted by it, the complaint shall be verified by oath and shall aver (1) that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law and (2) that the action is not a collusive one to confer on a court of the United States jurisdiction of any action of which it would not otherwise have jurisdiction. The complaint shall also set forth with particularity the efforts of the plaintiff to secure from the managing directors or trustees and, if necessary, from the shareholders such action as he desires, and the reasons for his failure to obtain such action or the reasons for not making such effort."

■ Rule 23(b) is the modern successor to Equity Rule 27, 28 U.S.C.A. § 723 Appendix. Summers v. Hearst, D.C., 23 F.Supp. 986. This rule owes its origin to equitable considerations and should be construed accordingly. Each case should be considered upon its peculiar facts and any arbitrary construction of the rule, which would result in the emasculation of the equitable considerations that led to its enactment, should be avoided. Delaware & Hudson Co. v. Albany & Susquehanna R. R. Co., 213 U.S. 435, 29 S.Ct. 540, 543, 53 L.Ed. 862.

In the Delaware & Hudson case the Court considered whether, on the facts shown, compliance with Equity Rule 94, a predecessor of Equity Rule 27, as to prior demand for action by directors or stockholders, was excused. The Court explained the reason for the rule and discussed certain cases in which the rule was strictly applied. The opinion stated, however, that "emergencies may arise in which the antagonism between the directory and the corporate interest may be unmistakable, and the requirements of the rule may be dispensed with; or, it is more accurate to say, do not apply."

Rule 94 did not contain the words "or the reasons for not making such effort", which appear to have been added when Rule 94 became Equity Rule 27 on a revision of the Equity Rules in February 1913. 226 U.S.Appendix p. 8. The addition may have been made in view of the recognized exception to the application of old Rule 94, expressed in the Delaware & Hudson opinion in May, 1909.

■ A realistic view should be taken of the facts pleaded as excusing a demand on directors that they bring suit. The court should not cajole itself into believing that the members of a Board of Directors elected by the dominant and accused majority stockholder, after accusations of wrongdoing have been made, were selected for membership on the Board to protect the interests of the minority stockholders and to assure a vigorous prosecution of effective litigation against the offending majority. Where we know that puppet directors would at best only go through the motions, are we barred from considering who would be manipulating the wires? As stated in the Delaware & Hudson case, supra, the rule "is intended to have practical operation, and to have

that it must, as to its requirements, be given such play as to fit the conditions of different cases."

 Whether or not a demand is excused in a particular case is a question for the court. Dana v. Morgan, D.C., 219 F. 313, 315; Ogden et al. v. Gilt Edge Consol. Mines Co. et al., 8 Cir., 225 F. 723. In passing upon that question the Court should consider the whole complaint, not merely the paragraph in which the pleader summarizes his reasons for not demanding action by the directors or stockholders. I am of the opinion that the allegations of the complaint are adequate within the concept of Rule 23(b). Here the corporate directors of "Acceptance" are alleged in effect to be mere "dummies" for "Finance". Further the complaint shows that their interests and the interests of those who named them are antagonistic to the interests of "Acceptance". It is alleged that these directors "have had knowledge of all the acts complained of herein and have acquiesced and participated therein." It is also alleged that "Finance", one of the participants in the profits of the illegal transactions owns or controls 85% to 90% of the common stock of "Acceptance" and has voting control of "Acceptance". The requirement of a demand should be dispensed with, where it is clear that a demand would be a useless gesture. Indeed, in cases such as this, where other representative actions by stockholders have been "settled", against the real interests of the injured corporation, it would be the height of folly to entrust the conduct of the litigation, either directly or indirectly, to the very people who are responsible for the wrongs, according to the complaint.

The present directors of "Acceptance", with full knowledge of the facts, for years, have done nothing to protect the interests of that corporation, as the complaint alleges. As a matter of fact the Court file in this case shows that they have fought this litigation bitterly. Their counsel have moved to vacate the service of the process and to dismiss the complaint for lack of jurisdiction. Both motions were denied by Judge Coxe. Then followed a motion to reargue these motions and that too was denied, D.C., 44 F.Supp. 489. Thereafter, these present motions were made. The same attorney who appeared generally herein for "Finance" and "Morris Plan" has appeared specially for "Acceptance" and has made the aforementioned motions on behalf of the latter before Judge Coxe and is making the present motions on behalf of all three defendant corporations. It is quite evident that the two real defendants, the alleged wrongdoers, are controlling the defense of this litigation on behalf of the nominal defendant, Industrial Acceptance Corporation, in whose interest plaintiff brings this derivative suit. In the Delaware & Hudson case, supra, the United States Supreme Court in commenting on the determined opposition of the directors to the stockholders' suit, stated: "In this case it was certainly determined. It continued until after this suit was brought. Both the Delaware Company and the Susquehanna Company, then under 'the administration of the Delaware Company,' to quote from the Circuit Court of Appeals, demurred to the bill."

 The complaint alleges a good cause of action against Industrial Finance Corporation and Morris Plan Corporation, for which a stockholder's derivative action, under the circumstances here presented, is the proper remedy.

Defendants' motions are in all respects denied. Settle order.