**Rita GOTTESMAN et al., Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION and E. I. du Pont de Nemours and Company, Defendants.**

United States Court of Appeals Second Circuit.

Argued April 13, 1959.

Decided June 18, 1959.

Henry L. Bayles and Edward A. Rothenberg, of Netter & Netter, New York City, for plaintiffs.

Henry M. Hogan, Detroit, Mich., and George A. Brooks, William A. Grier, and Edward B. Wallace, New York City, for defendant General Motors Corp.

Charles A. Horsky, of Covington & Burling, Washington, D. C., and Frank H. Gordon, New York City, for defendant E. I. du Pont de Nemours & Co.

Before CLARK, Chief Judge, and SWAN and MOORE, Circuit Judges.

CLARK, Chief Judge.

General Motors Corporation and E. I. du Pont de Nemours and Company, defendants in a shareholders' derivative action, seek permission to take an interlocutory appeal under 28 U.S.C. § 1292(b) from the denial of their motion to dismiss the complaint for failure to comply with Rule 23(b), F.R.Civ.P. This suit, a consolidation of three actions instituted shortly after the Supreme Court's decision in United States v. E. I. Du Pont de Nemours & Co., 353 U.S. 586, 77 S.Ct. 872, 1 L.Ed.2d 1057, is prosecuted by stockholders of General Motors seeking to recover treble damages and other relief on behalf of their corporation for activities of Du Pont held unlawful in the above Supreme Court decision.

By their motion to dismiss, defendants attack the rather lengthy allegations of paragraphs 7 and 21 of the consolidated complaint as failing to meet the requirements of F.R. 23(b) as to a demand on the shareholders of General Motors or an excuse for a failure to make one. In substance these paragraphs say that demand for action by the stockholders would be futile because of Du Pont's commanding position by virtue of its ownership of at least 23 per cent of General Motors common stock, with the remaining interest divided between several hundreds of thousands of small holders residing in widespread parts of the world. No attempt is made to attack corresponding allegations of paragraphs 7 and 20 excusing a lack of like demand upon the Board of Directors of General Motors. Judge Sugarman denied the motion to dismiss in a reasoned opinion in which he held the allegations sufficient, citing inter alia Delaware & H. Co. v. Albany & S. R. Co., 213 U.S. 435, 29 S.Ct. 540, 53 L.Ed. 862. But then he proceeded to give the certificate of substantial question which is the first step in the procedure for limited interlocutory appeals provided in the new statute, 28

U.S.C. § 1292(b). D.C.S.D.N.Y., 171 F. Supp. 661.

In granting this certificate we think the judge acted improvidently and contrary to the legislative intent; and we cannot now take the second and final step toward allowing an appeal without creating troubles for ourselves and litigants for the future in wasteful and delaying appeals not contemplated by the framers of the act, as is carefully explained in Milbert v. Bison Laboratories, 3 Cir., 260 F.2d 431. The limited purposes of the new statute have been made very clear. Although the federal rule against "piecemeal appeals" had been of long and cherished standing, certain vigorous attacks upon it led to the appointment of a distinguished Committee of the Judicial Conference of the United States under the chairmanship of the late Judge Parker to study the question. Rep.Jud.Conf. Sept. 24–26, 1951, pp. 32, 33. The Committee held hearings and took the views of the federal judges, who generally opposed the change. The Committee then reported unanimously disapproving the original proposal as unduly encouraging "fragmentary and frivolous appeals with the evils and delays incident thereto," and this report was approved by the Conference. Rep.Jud. Conf. March 20–21, 1952, p. 7; App. to Rep.Jud.Conf. Sept. 22–24, 1952, p. 203.

At Judge Parker's suggestion the Committee was continued to receive other proposals. One of these was to apply the principle then recently embodied in amended F.R. 54(b) of allowing an appeal of separable matters when both trial and appellate courts agreed on its propriety. The validity of that rule had been under attack in a limited number of cases, although ultimately it was sustained in Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297, and Cold Metal Process Co. v. United Engineering & Foundry Co., 351 U.S. 445, 76 S.Ct. 904, 100 L.Ed. 1311. In any event that rule applied only to civil actions, and it was thought that a limited and controlled right of appeal substantially along these lines might be useful.

Accordingly the Conference, with some members still dissenting, accepted the proposal while stressing its limited nature. Rep.Jud.Conf. Sept. 24–25, 1953, pp. 27, 28. The Report of the Judicial Conference and the House and Senate Reports all stress the limited and exceptional character of the cases to which it applies and condemn any indiscriminate use of the authority given. See extensive quotation from these reports in Milbert v. Bison Laboratories, supra, 3 Cir., 260 F.2d 431, 432–435, which holds that the power must be strictly limited to the precise conditions stated in the law. At least three courts of appeals have already passed local rules limiting and regularizing the procedure by which such appeals may be sought. See also In re Heddendorf, 1 Cir., 263 F.2d 887; Wright, The Interlocutory Appeals Act of 1958, 23 F.R.D. 199, 202; and Sen. Rep. No. 2434, 85th Cong., 2d Sess., 1958 U.S.Code Cong. & Adm. News 5255, 5262, quoting the *restricted* proposals originally suggested by the writer of this opinion. We are in agreement with this interpretation of the legislation.

■ Hence an interlocutory appeal should not be permitted unless the order under attack "involves a controlling question of law as to which there is substantial ground for difference of opinion and * * * an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). It would seem axiomatic that appeals challenging pre-trial rulings upholding pleadings against demurrer could not be effective in bringing nearer the termination of litigation; on the contrary, they only stimulate the parties to more and greater pre-trial sparring apart from the merits. We are not accustomed to criticize or reverse such pleading decisions, and the chance of reversal here seems so slight as to be quite negligible. Further, a reversal at most could lead only to a remand for repleading, with possibilities of further interlocutory appeals thereafter. If the district judge had thought that there was anything of permanent effect here, he

could have severed the issue under F.R. 42(b) and tried it on the facts to a conclusion more meaningful than a ruling on the mere form of plaintiffs' allegations.

As the issue now stands there is no "substantial ground for a difference of opinion" as to the district court's refusal to require plaintiffs to make a demand on General Motors' shareholders. One need not be made where it is "not reasonable to require it," Hawes v. City of Oakland, 104 U.S. 450, 461, 26 L.Ed. 827, or where it "would be 'futile,' 'useless,' or 'unavailing.'" Cathedral Estates v. Taft Realty Corp., 2 Cir., 228 F.2d 85, 88. Cf. Swanson v. Traer, 354 U.S. 114, 115, 77 S.Ct. 1116, 1 L.Ed.2d 1221; Smith v. Sperling, 354 U.S. 91, 94 n. 2, 77 S.Ct. 1112, 1 L.Ed.2d 1205. Without a doubt the combination of Du Pont's sizable ownership of General Motors stock, the number and diffusion of the remaining shareholders, and the inability under relevant state law of the shareholders as a body to cause General Motors to prosecute this action renders a demand on these shareholders unnecessary in the instant case. Delaware & H. Co. v. Albany & S. R. Co., 213 U.S. 435, 29 S.Ct. 540, 53 L.Ed. 862; Citrin v. Greater New York Industries, D.C.S.D. N.Y., 79 F.Supp. 692, 697; Berg v. Cincinnati, Newport & Covington Ry. Co., D.C.E.D.Ky., 56 F.Supp. 842, 845; Steinberg v. Hardy, D.C.Conn., 90 F.Supp. 167; Continental Securities Co. v. Belmont, 206 N.Y. 7, 15–16, 99 N.E. 138, 51 L.R.A.,N.S., 112; Steinberg v. Adams, D.C.S.D.N.Y., 90 F.Supp. 604, 609. The absurdity of defendants' contention that plaintiffs must so canvass their fellow stockholders is pointed up by the complete lack of mention of such a requirement in Judge Leibell's careful opinion in the famous case of Winkelman v. General Motors Corp., D.C.S.D.N.Y., 44 F. Supp. 960, 1022–1023.

We are bound to say, moreover, that from the nature of the principles governing shareholders' actions we see no chance that even a more meaningful resolution of the issues attempted to be formulated below can decisively advance the termination of this litigation. As is evident from the alternative relief defendants seek—that this action be stayed and the plaintiffs directed to seek approval of the suit at the next annual stockholders' meeting, the suit to be dismissed "in the event they do not secure such approval"—defendants' petition here is predicated on a fundamental misconception of the role of the shareholders as a body with respect to derivative suits. A shareholders' vote cannot prevent the institution of a derivative suit or annul one once it has been brought; had that been possible it is obvious that very few such suits could or would have been maintained. At best a ratification by the body of shareholders merely compels the minority shareholder plaintiffs to shift slightly the legal theories on which they rely so as to raise charges of fraud, waste of corporate assets, or the like. See Continental Securities Co. v. Belmont, supra, 206 N.Y. 7, 18–20, 99 N.E. 138, 51 L.R.A.,N.S., 112; Pollitz v. Wabash R. Co., 207 N.Y. 113, 100 N.E. 721; Steinberg v. Hardy, supra, D.C.Conn., 90 F.Supp. 167; 2 Fletcher, Cyclopedia of Corporations § 764 (1931); 13 id. § 5795. In the instant case even this slight effect on the litigation cannot occur, since the wrongful acts alleged—violations of the antitrust laws by Du Pont—can in no way be ratified or rectified by a vote of the shareholders of General Motors. Cf. City of Chicago v. Mills, 204 U.S. 321, 328–330, 27 S.Ct. 286, 51 L.Ed. 504.

In short, the question before these shareholders, were a poll of them here to be ordered, would be not whether this action should be stopped, but merely who ought most properly to press it forward. See Hawes v. City of Oakland, supra, 104 U.S. 450, 460–461, 26 L.Ed. 827; Corbus v. Alaska Treadwell Gold Mining Co., 187 U.S. 455, 463, 23 S.Ct. 157, 47 L.Ed. 256; City of Quincy v. Steel, 120 U.S. 241, 244–249, 7 S.Ct. 520, 30 L.Ed. 624; Taylor v. Holmes, 127 U.S. 489, 8 S.Ct. 1192, 32 L.Ed. 179; Dimpfel v. Ohio & Mississippi Ry. Co., 110 U.S. 209, 211, 3 S.Ct. 573, 28 L.Ed. 121; Berg v.

Cincinnati, Newport & Covington Ry. Co., supra, D.C.E.D.Ky., 56 F.Supp. 842, 845; Cohen v. Industrial Finance Corp., D.C.S.D.N.Y., 44 F.Supp. 491, 494–495. Obviously an interlocutory appeal to test the desirability of such a poll can only prolong, rather than shorten, this litigation.[1] We recognize that defense of a derivative suit of this kind may be hard and expensive. But no substitute method of minority corporate supervision has yet been developed, and, as experience shows so repeatedly, delays and evasion of the merits are only wasteful in the long run. A decision such as that of the Supreme Court in the Du Pont case is almost sure to result in stockholder attack which must be met sooner or later, if not at the hands of these self-appointed fiduciaries, then of some others. It would seem to the interest of court and litigants that these issues be promptly faced and finally adjudicated.

Petition denied.

MOORE, Circuit Judge (dissenting).

For many years, particularly in the Southern District and to some extent in other large metropolitan areas, one of the principal causes of trial calendar delays has been the time consumed by the trial of the protracted case, namely, a case which would require trial time of a judge of three to eight months. There have been protracted conferences by Bench and Bar as to ways and means of remedying the situation. Some results have been achieved by merely putting these cases to one side but the backlog nevertheless remains.

As is so frequently the case with procedural reforms, they come long after the need therefor has arisen. One of the reforms finally enacted was the adoption of the so-called Interlocutory Appeals Statute (28 U.S.C.A. § 1292(b)). This statute was intended to give to the trial judge who is charged with the responsibility of facing a future burdened by one of these protracted cases discretion in sending some important phase of the case which might materially advance the ultimate termination of the litigation to an appellate court for review. In this case the trial court, recognizing that his decision "enables a relatively small stockholder interest to plunge two large corporations into inevitably long and expensive litigation which, should this determination be erroneous, would result in a futile waste of time and money by both the plaintiffs and the defendants," has granted a certificate in which he says the order involves "a controlling question of law as to which there is substantial ground for difference of opinion" and that "an immediate appeal from the order may materially advance the ultimate termination of the litigation;". Such a certification, in my opinion, is entitled to great weight and should not be rejected unless it is apparent on the face that the considerations which prompted the trial court to issue it have no basis in law or fact. It certainly cannot be said that this new statute has opened the floodgates to needless appeals because thus far a bare trickle of interlocutory appeals has flowed into the stream of appellate litigation. Nor should it be the role of appellate courts judicially to nullify, in effect, the statute without at least giving it a fair trial to see whether the beneficial purpose for which it was enacted may not result in the disposition or the material shortening of the long case. Surely no better example of the type of case which moved the supporters of the statute to action can be found than in that here presented. (See House Report No. 1667, 85 Cong. 2d Sess., pp. 1, 2; Senate Report No. 2434, 85 Cong. 2d Sess., pp. 3, 4.) Milbert v. Bison Laboratories, 3 Cir., 1958, 260 F. 2d 431, does not apply because the sole

---

1. As this action invokes the federal question jurisdiction of the district court, any realignment of General Motors as a plaintiff, which might follow a highly unlikely shareholders' vote approving the prosecution of this action, could not terminate the action as it might possibly in a suit founded on diversity of citizenship. Smith v. Sperling, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205.

basis of the decision was the failure of the district court judge to make the certificate and the failure of counsel to apply for permission to appeal within 10 days. The two reports of House and Senate from which quotations were made indicate that this might well be the type of case to which the interlocutory appeals section should apply because they refer to "protracted and expensive litigation," "long drawn out cases" and cases where a long trial would be necessary for the determination of liability or damages upon a decision overruling a defense going to the right to maintain the action. Certainly it will be too late so far as time and expense are concerned at the end of any hearing on the merits to determine that the plaintiffs had no right to bring this action.

Consideration must now be given to the substantive law involved. It is a fundamental principle of corporate law that the management of a corporation is vested in its directors. No individual stockholder is empowered to take over the reins of corporate management. There are certain circumstances, however, which permit a stockholder in a derivative capacity to sue on behalf of his corporation. Before this radical step is permitted certain definite facts must be alleged and proved. Thus, if the directors are personally guilty of misfeasance or malfeasance so that a suit should be instigated against them by the corporation for damages, it would be but natural that they would not be likely to authorize a suit against themselves. Upon such allegations a stockholder would be justified in seeking to represent the corporation. However, this is by no means the situation here. When analyzed it appears that there is no charge whatsoever in the complaint that the directors or any of them have personally profited at the expense of the corporation or that the proposed derivative stockholders suit seeks damages from or even names any director of General Motors as a defendant. There is no showing as to the names of any of the directors of General Motors, their business affilia-

tions, their connection, if any, with the defendant du Pont, or the circumstances under which they were elected directors. There is no allegation that any one of the directors is beholden to du Pont in a business way or personal way. The only allegation is that du Pont owned approximately 23% of the outstanding common stock of General Motors, followed by the allegation that by reason of this fact "du Pont's stock interest in General Motors exerted a potent influence on the affairs of General Motors, promoted the acts and transactions herein alleged, and induced General Motors to participate therein." There is the further allegation that "defendant du Pont had working control (sometimes hereinafter referred to as 'control') over General Motors, which permitted it to nominate and elect and/or dominate and control the majority of the Board of Directors and/or officers of said corporation, and to select and/or dominate and control a large part of the personnel of said corporation concerned with the acts and transactions herein alleged, to determine a large part of said corporation's policies including those relating to said acts and transactions, and to cause General Motors to participate in said acts and transactions." There is no allegation that any demand was made upon "the managing directors or trustees," namely, the Board of Directors but only an allegation that no demand had been made on the body of stockholders of General Motors. This failure is attempted to be excused by alleging that if the majority of stockholders had demanded that suit be brought it would not have been honored by General Motors Board of Directors. No facts in support of such allegation are set forth. There is no presumption in corporate law that the mere holding of 23% of stock in another corporation is sufficient to justify a stockholder in imposing upon the corporation the burdens and expenses of a protracted law suit against the 23% stockholder. However, the least that should be done here before isolating some trial judge for a period of many months

to try such case as there may be is to make sure that at the outset this time and effort will not be wasted.

From a procedural point of view the plaintiffs quite apart from the ultimate merits of the suit itself should be required to substantiate the allegations that the 23% du Pont stock interest was responsible for all of the so-called domination and control alleged in paragraph 7 of the complaint. These plaintiffs holding a small amount of stock, as the trial judge said, have no right to "plunge two large corporations into inevitably long and expensive litigation" unless they can establish this right at the threshold. It is not too much to ask these plaintiffs to make specific charges and to prove them rather than to create a new principle of corporate law that the ownership of less than 25% of the stock is to be an irrebuttable presumption of domination and control. The question before the court below goes far beyond "the mere form of plaintiffs' allegations" (as says the majority) and deals with the allegations essential to entitle these plaintiffs to proceed. However, the merits of the question are not, and should not be, before the court on this application. Enough appears both from the trial court's certification and from the legal issues involved to entitle the appeal to be heard on the merits. I find it quite inappropriate to suggest that, were the majority of the stockholders to ratify action properly taken, minority shareholders would be compelled to get around this difficulty and "to shift slightly the legal theories on which they rely so as to raise charges of fraud, waste of corporate assets, or the like" (see majority opinion). It scarcely behooves the courts to suggest to litigants that they can satisfy pleading formalities merely by alleging fraud and waste. More seemly would it be to require (as does the law) that fraud charges (if the facts support them) be made as a prerequisite to bringing the action. At least then the party alleging fraud will be under the burden of proving it. Nor is there any presumption that every major anti-

trust case "is almost sure to result in stockholder attack." This practice may develop if the legal requirements for bringing such suits are abolished but every governmental attack upon alleged monopoly does not carry with it the presumption of director or stockholder wrongdoing.

The court below relied on Delaware and Hudson Co. v. Albany and Susquehanna Railroad Co., 1909, 213 U.S. 435, 29 S.Ct. 540, 544, 53 L.Ed. 862, saying, "The facts here presented are governed by the ruling in the Delaware case * * * *" A reading of that case shows that the directors and executive officers of both companies were virtually the same. The Supreme Court said that "The situation was unique" and that "Rule 94 is intended to have practical operation, and to have that it must, as to its requirements, be given such play as to fit the conditions of different cases." Furthermore the case came before the court after a final money decree. The Delaware case stands upon its own facts leaving other cases to be judged upon theirs.

In Cohen v. Industrial Finance Corporation, D.C., 44 F.Supp. 491, 493, the defendant corporation was the majority stockholder and as the court said the facts showing director domination were "pleaded with considerable particularity." The same is true in Winkelman v. General Motors Corporation, D.C., 44 F. Supp. 960, 1022. There 22 out of 27 members of the Board were named as defendants. The court said "Directors could not be expected to sue themselves, on behalf of the Corporation, with any enthusiasm." In Citrin v. Greater New York Industries, D.C., 79 F.Supp. 692, the allegations claimed that all members of the Board had participated in the acts complained of. This court said quite recently in Cathedral Estates v. Taft Realty Corporation, 2 Cir., 1955, 228 F.2d 85, 88, that demand on the directors or shareholders need not be made when it would be futile but also added that it need not be made "where the directors and controlling shareholders are antago-

nistic, adversely interested, or involved in the transactions attacked." At least the complaint there alleged that no demand was made "for the reason that the individual defendants whose acts are complained of control Taft Realty and it would be futile to ask them to sue themselves." Smith v. Sperling, 1957, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205, involved the question of jurisdiction, although even there there were facts which showed that the defendant sought to be sued, namely, United States Pictures, Inc., was the corporation of the son-in-law of a director of Warner Bros. Thus in these cases far more is alleged than in the present complaint. Nor is it any answer to say that curative allegations could be made. The whole point of forcing a plaintiff to make an allegation sufficient in law is to force him to prove it if he is to prevail.

I would grant the motion for leave to appeal.