SCM CORPORATION

v.

XEROX CORPORATION.

No. 15807.

United States District Court,
D. Connecticut.

May 18, 1979.

Ira B. Grudberg, New Haven, Conn., Gordon B. Spivack, New York City, for plaintiff.

Stanley D. Robinson, Michael Malina, New York City, for defendant.

## SUPPLEMENTAL OPINION

NEWMAN, District Judge.

This case is before the Court upon a remand from the Court of Appeals for "a further conclusion of law" in connection with a certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). In a decision filed December 29, 1978, this Court considered what judgment should be entered upon the jury's responses to interrogatories in light of the applicable law. *SCM*

*Corp. v. Xerox Corp.*, 463 F.Supp. 983 (D.Conn.1978). This Court ruled that of SCM's five claims pursued at trial, four should be dismissed in their entirety: the 1964 exclusion claim, the Fuji-Xerox 2200 claim, the MUP and XCP marketing claims, and the 6740 marketing claim. As to these claims, judgment was directed to be entered pursuant to Fed.R.Civ.P. 54(b), since other severed claims remained. *Id.* at 1020. As to the fifth claim, the 1969 exclusion claim, this Court ruled that partial judgment pursuant to Rule 54(b) should enter dismissing SCM's claims for damages, leaving undecided SCM's claim for equitable relief with respect to the 1969 exclusion claim. This Court also certified all of its rulings for interlocutory appeal pursuant to § 1292(b), in the event a reviewing court concluded any of the rulings would not support a final judgment within the meaning of Rule 54(b).

The Court of Appeals remanded on May 10, 1979. *SCM Corp. v. Xerox Corp.*, 599 F.2d 32 (2d Cir. 1979). The opinion states that the judgments dismissing the four claims against Xerox "appear to be final for purposes of Rule 54(b)." *Id.* at 33. As this Court apprehended, 463 F.Supp. at 1020, the dismissal of only the claim for damages with respect to the 1969 exclusion claim was considered not final, 599 F.2d at 33. In order to assist in determination of whether this Court's ruling with respect to the damage portion of that claim was appropriate for § 1292(b) certification, the Court of Appeals requested this Court to do two things. First, a conclusion of law is to be made as to "whether the District Court intended to hold that Xerox was 'liable' on the post-1969 claim but that money damages were not available as a remedy, or whether the court decided merely that money damages were not a remedy without deciding the issue of liability." 599 F.2d at 33. Second, this Court is requested to "formulate what it regards as 'the controlling question[s] of law.'" *Ibid.* (Brackets in original). The views of counsel have been expressed at a chambers conference.

1. As to the first matter, this Court concluded, and hereby reaffirms the conclu-

sion, that with respect to SCM's 1969 exclusion claim, SCM is not entitled to money damages and no decision has been made with respect to Xerox's liability. There are several reasons why this Court has found it thus far unnecessary to rule on Xerox's liability, unrelated to any particular remedy, and preferable to avoid such a ruling. First, it is by no means clear that SCM's claim for equitable relief will be pursued if the rejection of the claim for damages is upheld. Even if the claim for equitable relief is pursued, considerable uncertainty will arise as to whether SCM's current level of activity in the plain paper copying field is sufficient to entitle it to seek prospective equitable relief with respect to that field, and, if so, whether any equitable relief is warranted beyond the remedies already obtained by the Federal Trade Commission pursuant to a consent decree. It is possible that determination of these issues could be made preliminarily upon a testing of the sufficiency of the plaintiff's offer of proof, but there is also the distinct possibility that such determination would require a protracted evidentiary hearing. In any event, rejection of the damage claim plus a subsequent determination that SCM is not entitled to equitable relief would obviate any determination of whether SCM has established Xerox's liability, unrelated to remedies.

Furthermore, determination of liability, unrelated to remedies, would probably require resolution of a large number of issues that might never require consideration by this or a reviewing court if the rejection of damage claims is upheld. For example, in rejecting SCM's contention that Xerox is liable for damages for violation of § 7 of the Clayton Act, this Court found it unnecessary to decide whether the evidence was sufficient to support the jury's implicit finding that a relevant product market was reasonably foreseeable at the time of the patent acquisitions from Battelle or whether that finding was so contrary to the weight of the evidence as to warrant a new trial. See 463 F.Supp. at 1001. Similarly, in rejecting SCM's contention that Xerox is liable for damages for violation of § 1 of the Sherman Act, this Court found it unnecessary to decide whether the evidence was sufficient to support the jury's implicit finding that the 1956 agreement terminated a sub-licencing obligation under which sub-licencing of xerographic patents for plain paper copying would have occurred, or whether that finding was so contrary to the weight of the evidence as to warrant a new trial. 463 F.Supp. at 1005.

Finally, a determination of Xerox liability at this point runs the distinct risk of precipitating a needless retrial of this protracted case. For example, a determination of whether Xerox is liable for a violation of § 2 of the Sherman Act would require consideration of the validity of the jury's finding that Xerox willfully acquired or maintained monopoly power in the relevant market. (Question 4a). The jury concluded that the 1956 Battelle Agreement was an important indicator of Xerox's conduct in violation of § 2. Indeed, the jury specifically found that this agreement was the only patent-related exclusionary conduct that proximately caused SCM's not entering into plain paper copying. (Question 24a–1). Yet there is a substantial question whether Xerox did anything violative of the antitrust laws by entering into the 1956 Battelle Agreement. And there is a further substantial question whether a finding of § 2 liability can rest on a conclusion that the 1956 agreement was a violation of § 1 (Question 15a). Thus, an inquiry into liability, unrelated to remedy, might reach the conclusion that § 2 liability has not been validly found because of invalid assessment of the lawfulness of the 1956 agreement, yet could be validly found based upon Xerox's post-1969 conduct, at and after the time it had monopoly power in the relevant market. Surely a retrial to determine § 2 liability upon a proper basis should not be pursued unless such liability will entitle the plaintiff to some relief.

SCM's other theories of liability also encounter issues that might preclude a finding of liability on the present record, but might support liability on fact-finding more circumscribed as to permissible legal theories.

But exploration of such issues and retrial of the claim on such narrowed theories will be avoided if SCM is determined not to be entitled to damages on even the present record, and cannot present a basis for entitlement to equitable relief. Moreover, in ruling on whether SCM is entitled to damages on the present record, the Court of Appeals may well indicate a view of the applicable law that will either preclude any claim for equitable relief or at least provide authoritative guidance for any subsequent consideration of equitable relief.

For all of these reasons, this Court continues to believe that sound judicial administration warrants a determination at this point only that SCM is not entitled to damages on the 1969 exclusion claim, without decision as to whether there is Xerox liability on this claim.

2. Responding to the Court of Appeals' second request, seeking a formulation of the controlling questions of law, is far more problematical. That is because in a case bristling with as many issues as this one there is a variety of approaches available to be taken in deciding whether or not SCM is entitled to any damages on the 1969 exclusion claim. The damage claim presents a pyramid of issues, and it is possible to select controlling questions from the top, the bottom, or anywhere in between. But the choice of issues to decide creates additional problems of its own. For example, a controlling question from the top of the pyramid is: "Can a unilateral refusal to license patents violate the antitrust laws?" A negative answer to that question might well dispose of SCM's entire claim, but answering a question of that generality involves decision-making broader than necessary for decision in this case. On the other hand, an affirmative answer to that broad question might turn out to be needless dictum, if SCM loses on subsidiary issues farther down the pyramid. The broad question could be refined slightly to read: "Does § 4 of the Clayton Act impose damage liability for a unilateral refusal to license patents?" That formulation also risks deciding too much, if the answer is no, or too little, if the answer is yes.

At the other extreme, a large number of issues could be selected from the bottom of the pyramid. For example, as to each one of the jury's 54 verdicts, a controlling question could be whether the evidence was sufficient to support the verdict. Or a controlling question could be whether the instructions of law concerning each issue submitted to the jury were correct. But decision of all these questions might be totally unnecessary if SCM is found to have lost on issues farther up the pyramid.

It is also possible to frame controlling questions from the middle of the pyramid that concern each of the statutes on which SCM grounded a theory of liability. For example, SCM's two § 7 theories could be the subject of the following two controlling questions: "Do §§ 4 and 7 of the Clayton Act impose liability for damages upon a company that (a) acquires patents at a time when the relevant product market for a product embodying the patented inventions does not exist, but when it is reasonably foreseeable that the relevant product market will exist in the future, and the probable effect of the acquisition of the patents will be to lessen competition or tend to create a monopoly in the prospective relevant product market, and (b) refuses to license the patents after the relevant product market comes into existence?" and "Do §§ 4 and 7 of the Clayton Act impose liability for damages upon a company that (a) holds patents it has previously acquired, and there exists a relevant product market for a product embodying the patented inventions, and the probable effect of the holding of the acquired patents will be to lessen competition or tend to create a monopoly in the relevant product market, and (b) refuses to license the patents?"

A controlling question with respect to the principal part of SCM's § 1 theory would be: "Do § 4 of the Clayton Act and § 1 of the Sherman Act impose liability for damages upon a company that (a) lawfully holds exclusive licenses to patents owned by a research institute and has an agreement with the research institute to use diligent

efforts to find sub-licensees for the licenses patents, (b) makes an agreement with the research institute whereby the company acquires title to the previously licensed patents and thereby extinguishes the prior sublicensing obligation, and (c) thereafter refuses to license the patents?"

A controlling question with respect to the principal part of SCM's § 2 theory would be: "Do § 4 of the Clayton Act and § 2 of the Sherman Act impose liability for damages upon a company that (a) has willfully acquired or maintained monopoly power in a relevant market, and (b) refuses to license its patents?"

It would also be possible to frame controlling questions that consider Xerox's attack on SCM's damage computations. A broad question would be: "Is the evidence of SCM's estimated lost profits too speculative to support a damage award?" Or a narrower damage question would be: "In the circumstances of this case is an award of damages for loss of net going concern value lawful?"

Finally, a controlling question can be framed to consider Xerox's affirmative defense of avoidable consequences, which was sustained by the jury (Question 34): "Is it a defense to a claim for damages for violation of the antitrust laws that the company claiming damages suffered for lack of patent licenses should reasonably have avoided such damages by (a) continuing prior litigation against the company holding the patents, which included an attack upon the enforceability of the patents and which was settled without prejudice, or (b) bringing an earlier lawsuit to obtain licenses?" An affirmative answer to that question would also require consideration of the sufficiency of the evidence in support of the jury's finding.

As can readily be seen, the choice of controlling questions is extremely broad. This is a consequence of endeavoring to use § 1292(b) after a record has been fully developed, rather than at a preliminary stage, when the absence of a record often isolates one or a small number of precise issues of law, but sometimes renders them

unsuccessful candidates for interlocutory review. See *Gottesman v. General Motors Corp.*, 414 F.2d 956, 958 (2d Cir. 1969). It would be ironic if in this case the presence of a fully developed record and the resulting plethora of available issues also precluded interlocutory review.

If interlocutory review is denied at this stage, the future course of this litigation includes two possibilities wholly inconsistent with sound judicial administration. One is a full hearing on SCM's claim for equitable relief that could well involve months of trial time. SCM has sought wide-ranging equitable relief including a dismantling of Xerox's foreign arrangements and a break-up of its domestic operations. A second equally unattractive possibility is a new trial in the event this Court were forced to consider all possible subsidiary issues and concluded that some of the jury's verdicts were against the weight of the evidence or were submitted to the jury on theories partially invalid because of some of SCM's extravagant claims.

In light of all these conditions, this Court has concluded that the most appropriate controlling question of law to be formulated in response to the request of the Court of Appeals is the fundamental question that governs the damage aspect of SCM's 1969 exclusion claim: "Based on the evidence presented, the trial court's instructions to the jury, the jury's answers to interrogatories, and applicable law, is the plaintiff entitled to entry of judgment for $111.3 million?" ($11.5 million of lost profits plus $25.6 million of lost net going concern value, all trebled). To this question, this Court has answered no, and has entered an order based upon that answer. That order should be reviewed under § 1292(b). In reviewing that order and answering the controlling question as framed, the Court of Appeals has ample leeway to resolve either a small number of very broad issues, or a large number of very precise issues, or to identify whatever it believes to be dispositive issues.

Whether plaintiff is entitled to $111.3 million on the 1969 exclusion claim is a controlling question of law as to which

there is substantial ground for difference of opinion, and an immediate appeal from the ruling of this Court, which answered that question in the negative, will in all likelihood materially advance the ultimate termination of this litigation. A controlling question within the meaning of § 1292(b) is not limited to threshold issues such as jurisdiction or sufficiency of a claim, which are a predicate for all future proceedings in a lawsuit. For example, both the Senate and House reports on the bill that became § 1292(b) illustrate as an example of an appropriate use of the new provision a ruling allowing or refusing joinder of a third-party defendant. S.Rep.No.2434, H.Rep. No.1667, 85th Cong., 2d Sess. (1958), U.S. Code Cong. & Admin.News 1958, p. 5255. That example plainly indicates that the controlling question that leads to a ruling appealable under § 1292(b) need not bear a jural relationship to subsequent issues in the case nor need it be an issue which, if resolved negatively, automatically ends the suit. A ruling against impleading a third-party defendant determines no subsequent issues between the original parties. This example also indicates that whether an immediate appeal may materially advance the ultimate termination of the litigation can properly turn on pragmatic considerations. The House Report described as a proper case for interlocutory appeal "cases involving third party defendants where there would be no reason for continuing the actions if the third parties could not be held liable." H.Rep.No.1667, *supra*, at 1. So here, if it were authoritatively determined that SCM is not entitled to any money damages, there might well be no reason for continuing the action.

This is not a situation where an interlocutory appeal is urged on a preliminary issue that may evaporate in the course of further proceedings. See *Gottesman v. General Motors Corp.*, 268 F.2d 194 (2d Cir. 1959). Here, as explicitly recommended by the Court of Appeals in *Gottesman*, an important issue, SCM's entitlement to damages on the 1969 exclusion claim, was "severed . . . ánd tried . . . on the facts to a conclusion . . . ." *Id.* at 197.

Whether or not SCM is entitled to judgment for $111.3 million is an issue that will be before the Court of Appeals either now or at some future time after consideration of equitable relief. Even if this Court should order a new trial as to any issue, on appeal from any judgment thereafter, there would still be presented the question of whether plaintiff was at this point entitled to a judgment for $111.3 million. The Court of Appeals is respectfully requested to accept certification of this question at this time.

The Clerk of this Court is directed to transmit promptly a copy of this Supplemental Opinion to the Court of Appeals.